1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation,<br><br>                                        Plaintiff,<br><br>v.<br><br>LARRY NELSON, an individual, TRACY IRENE GOLDEN, an individual, SYLENA SANDERS, an individual, the UNITED STATES OF AMERICA, and Does 1 – 5,<br><br>                                        Defendants. | Case No. 20-cv-00211-MMA (AHG)<br><br>**ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS**<br><br>[Doc. No. 12] |

On January 31, 2020, Plaintiff Safeco Insurance Company of America ("Plaintiff") filed a complaint against Larry Nelson ("Nelson"), Tracy Irene Golden, Sylena Sanders, and the United States of America. *See* Doc. No. 1. Plaintiff seeks a declaratory judgment from the Court declaring, amongst other things, that it has no duty to defend its insured, Larry Nelson, in any of the pending suits filed against him by the respective defendants. *See* Doc. No. 1. at 29–30.[1]

---

[1] All citations refer to the pagination assigned by the CM/ECF system. All docket references refer to the docket of this action unless otherwise noted.

1    The United States moves to dismiss for lack of subject matter jurisdiction pursuant

2   to Federal Rule of Civil Procedure 12(b)(1).  *See* Doc. No. 12.  Plaintiff filed an

3   opposition to the United States' motion, to which the United States replied.  *See* Doc.

4   Nos. 14, 17.  The Court took the matter under submission on the papers and without oral

5   argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 18; Fed. R. Civ. P. 78(b).

6   For the reasons set forth below, the Court **GRANTS** the United States' motion.

### BACKGROUND

8    The root of this dispute is a suit between two of the defendants in Plaintiff's

9   declaratory judgment action, the United States and Nelson.  *See* Doc. No. 1; Doc. No. 1-2

10  ("Ex. A").  The United States filed a civil enforcement suit against Nelson on June 11,

11  2019 alleging numerous violations of Title VIII of the Civil Rights Act of 1968, as

12  amended, 42 U.S.C. §§ 3601, *et seq.* ("the Fair Housing Act").  *See* Doc. No. 1 ¶ 8; Ex.

13  A.  These allegations include "that Nelson has subjected tenants of his residential rental

14  properties to discrimination, based on sex" as well as allegations of sexual harassment

15  towards Nelson's female tenants.  Doc. No. 1 ¶12, 12(a)–(j).

16    Plaintiff is not a party to the United States' suit against Nelson.  *See* Ex. A.

17  Plaintiff relates to that suit only in that it issued Nelson several insurance policies

18  covering the rental properties at which the alleged statutory violations occurred.  *See*

19  Doc. No. 1 ¶¶ 24–38; Ex. A.  Plaintiff agreed to defend Nelson in the United States' suit

20  against him but subjected that defense "to a full and complete reservation of rights."

21  Doc. No. 1 ¶ 39.  The United States' suit against Nelson is ongoing.  *See* S.D. Cal. Case.

22  No. 19cv1087-CAB-WVG.

23    Meanwhile, Plaintiff initiated this action against Nelson, the United States, and

24  other individuals who have also sued Nelson based on similar allegations to those of the

25  United States.  *See* Doc. No. 1.  Plaintiff alleges that the Court has subject matter

26  jurisdiction over the United States pursuant to 28 U.S.C. § 1332 and the Administrative

27  Procedure Act, 5 U.S.C. § 702.  *See id.* ¶¶ 1, 6.  Plaintiff seeks a declaration and

28

corresponding judgment establishing that it has no duty to defend or indemnify Nelson against any of the claims brought against him by the United States. *See id.* ¶ 57.

The United States moves to dismiss Plaintiff's claim against it for lack of subject matter jurisdiction on three grounds. *See* Doc. No. 12. First, the United States argues that no case or controversy exists between it and Plaintiff. *See id.* at 3–5. Second, the United States asserts that it has not waived its sovereign immunity and is therefore immune from Plaintiff's suit. *See id.* at 5–6. Finally, the United States contends that Plaintiff's reliance on section 702 of the Administrative Procedure Act "to circumvent the jurisdictional failures in its complaint . . . is also misplaced." *Id.* at 6.

In response, Plaintiff sets forth two arguments. *See* Doc. No. 14. First, Plaintiff asserts that a case or controversy exists between it and the United States because the United States is "a third-party claimant and potential judgment creditor under California Insurance Code section 11580(b)(2)." *Id.* at 5; *see id.* at 5–7. Second, Plaintiff contends that section 702 of the Administrative Procedure Act constitutes a waiver of sovereign immunity for actions seeking declaratory relief and the United States is properly subject to suit as a result. *See id.* at 5, 7–9.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal of a complaint for lack of subject matter jurisdiction. "[F]ederal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978), *superseded by statute on other grounds*, 28 U.S.C. § 1367, *as recognized in LaSalle Nat'l Trust, NA v. Schaffner*, 818 F. Supp. 1161, 1165 (N.D. Ill. 1993). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)). Subject matter jurisdiction must exist when the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (citing *Mollan v. Torrance*, 22 U.S. (9. Wheat.) 537, 538 (1824)). Further, subject matter

jurisdiction may be raised "at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A facial attack on jurisdiction asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial challenge to jurisdiction, a court accepts the allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

**DISCUSSION**

## I. Sovereign Immunity

The United States moves for dismissal on the grounds that it has not waived its sovereign immunity from suit and Plaintiff's reliance on the Administrative Procedure Act ("APA") to establish such a waiver is inapposite. *See* Doc. No. 12 at 5–7. Plaintiff responds by reiterating its reliance on the general waiver of sovereign immunity articulated in section 702 of the APA. Plaintiff asserts that the United States' "coercive action against [Plaintiff's] insured" constitutes a "final agency action" subjecting the United States to suit within the meaning of the APA. *See* Doc. No. 14 at 9.

It is an unquestioned principle that the United States is a sovereign entity that is not amenable to suit without its consent. *See, e.g.*, *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008). It is also well-established that the burden of overcoming sovereign immunity lies with the party bringing suit against a sovereign. *See Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (citing *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986)). That is, absent a positive demonstration that sovereign immunity does not apply, this Court must presume that the United States is not amenable to suit. *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) ("Where a suit has not been consented to by the United States, dismissal of the action is required."); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic

4

that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

The question, then, is whether Plaintiff has affirmatively pleaded around the United States' sovereign immunity. The Court concludes that Plaintiff has not.

In its opposition to the United States' motion, Plaintiff offers two statutory grounds for establishing a waiver of sovereign immunity, the Declaratory Judgment Act, 28 U.S.C. § 2201, and section 702 of the APA. *See* Doc. No. 14 at 7. However, the Declaratory Judgment Act functions solely as a procedural mechanism. *See Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only."). The Declaratory Judgment Act is neither a waiver of sovereign immunity nor an independent grant of jurisdiction. *See Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954); *see also Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) (per curiam) ("The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court."); *Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C 2008) (citing *Balistrieri v. United States*, 303 F.2d 617, 618 (7th Cir. 1962)) (finding that the Declaratory Judgment Act does not waive sovereign immunity). Rather, it "merely provides an additional remedy in cases where jurisdiction is otherwise established." *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 280 (9th Cir. 1988) (citing *Luttrell v. United States*, 644 F.2d 1274, 1275 (9th Cir. 1980)).

Additionally, Plaintiff alleges that section 702 of the APA establishes the United States' waiver of sovereign immunity. Section 702 states in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed

nor relief therein denied on the ground that it is against the United
States or that the United States is an indispensable party.

5 U.S.C. § 702.

The Ninth Circuit has conflicting interpretations of the scope of this provision.[2]
For example, in one case, the Ninth Circuit interpreted section 702 as a general waiver of
sovereign immunity "in actions seeking nonmonetary relief against legal wrongs for
which governmental agencies are accountable." *Presbyterian Church (U.S.A.) v. United
States*, 870 F.2d 518, 525 (9th Cir. 1989) (footnote omitted).  In so doing, the Ninth
Circuit held that section 702's application was not limited to the context of "agency
action" as the APA defines the term.  *Id.* ("This waiver was clearly intended to cover the
full spectrum of agency conduct, regardless of whether it fell within the technical
definition of 'agency action' contained in § 551(13).").  However, in a subsequent
opinion, the Ninth Circuit recognized that "the APA's waiver of sovereign immunity
contains several limitations." *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194,
1198 (9th Cir. 1998).  Among these limitations is section 704's requirement that agency
action either be made reviewable by statute or constitute "final agency action."  *See id.*
(quoting 5 U.S.C. § 704).

The Ninth Circuit has acknowledged the conflict between these opinions, going so
far as to state that there is "no way to distinguish *The Presbyterian Church* from *Gallo
Cattle*," but nevertheless has declined to resolve the issue.  *Gros Ventre Tribe v. United
States*, 469 F.3d 801, 809 (9th Cir. 2006); *see also EEOC v. Peabody W. Coal Co.*, 610
F.3d 1070, 1086 (9th Cir. 2010) (recognizing the tension between *Presbyterian Church*
and *Gallo Cattle* and stating "[w]e similarly need not resolve this tension here.").  In any

---

[2] "The question of how [section 702] should be interpreted has generated intra-and inter-circuit splits
and general confusion."  Kathryn E. Kovacs, *Scalia's Bargain*, 77 Ohio St. L.J. 1155, 1170 (2016).
Moreover, "[o]n the question of how the waiver of sovereign immunity in § 702 relates to the other
provisions of the APA, the courts of appeals are all over the map."  *Id.* at 1177.

event, the Court applies the principles expressed in both opinions and finds Plaintiff's invocation of section 702 misplaced under both standards.

Plaintiff interprets section 702 as waiving the United States' "sovereign immunity for *any* action stating a claim against the United States and seeking relief other than money damages," and cites to *Presbyterian Church* in support. *See* Doc. No. 14 at 7-8 (emphasis in original) (citing *Presbyterian Church*, 870 F.2d at 525–26). While the Ninth Circuit has observed that "[t]his waiver was clearly intended to cover the full spectrum of agency conduct, regardless of whether it fell within the technical definition of 'agency action' contained in § 551(13)," *Presbyterian Church*, 870 F.2d at 525, there are fundamental differences between *Presbyterian Church* and the present case that preclude the extension of the section 702 waiver here.

*Presbyterian Church* involved alleged First and Fourth Amendment violations perpetrated by the agency during the course of an investigation targeting the plaintiff religious institutions. *See* 870 F.2d at 520–24. The plaintiffs' constitutional claims were premised on "agency action" directed specifically against the plaintiffs, not against a third party. Moreover, the constitutional nature of the plaintiffs' claims provided an underlying basis for subject matter jurisdiction which is simply not present in this case.

Second, as already noted, the Ninth Circuit has established that section 702 applies to "legal wrongs for which governmental agencies are accountable." *Id.* The D.C. Circuit has provided persuasive guidance defining the term "legal wrong" within the meaning of the APA. According to the D.C. Circuit "'legal wrong' means such wrong as particular statutes and the courts have recognized as constituting grounds for judicial review." *Kansas City Power & Light Co. v. McKay*, 225 F.2d 924, 932 (D.C. Cir. 1955). In other words, "the invasion of a legally protected right" is a "legal wrong." *See Pa. R.R. Co. v. Dillon*, 335 F.2d 292, 294 (D.C. Cir. 1964) (citing *Gonzales v. Freeman*, 334 F.2d 570, 576 n.6 (D.C. Cir. 1964)).

Here, it is far from clear that the United States has committed a legal wrong against Plaintiff. Plaintiff's suit is a contract dispute between it and its insured, and the United

7

20-cv-00211-MMA (AHG)

States is not a party to their agreement.  *See* Doc. No. 1; Doc. No. 12.  The Court is reluctant to classify a civil enforcement action brought by the United States under the auspices of the Fair Housing Act against an *insured* as a "legal wrong[] for which governmental agencies are accountable" to the *insurer*.  *See Presbyterian Church*, 870 F.2d at 525.  Further, Plaintiff cannot rely on the Fair Housing Act to supply such a wrong or assert that it has been "adversely affected or aggrieved by agency action" as stated in section 702.  *See* 5 U.S.C. § 702.  By its own terms, the Fair Housing Act defines "aggrieved person" as someone who "claims to have been injured by a discriminatory housing practice," 42 U.S.C. § 3602(i)(1), or "believes that such person will be injured by a discriminatory housing practice that is about to occur."  *Id.* § 3602(i)(2).  Plaintiff is neither.  Nor can Plaintiff claim to be a "respondent" within the meaning of the Fair Housing Act.  According to section 3602, a "respondent" is "the person or other entity accused in a complaint of an unfair housing practice," *id.* § 3602(n)(1), or "any other person or entity identified in the course of investigation as required with respect to respondents so identified under section 810(a)."  *Id.* § 3602(n)(2).  Because Plaintiff was not sued by the United States in its enforcement action and has not established that section 3602(n)(2) applies, it cannot claim to be a "respondent."  *See* Doc. No. 1 Ex. 1; Doc. No. 12 at 4; § 3602(n).  Plaintiff has provided no other theories through which it might have suffered a "legal wrong" as a result of agency action.  *See* Doc. No. 14.  Thus, Plaintiff cannot claim a waiver of sovereign immunity under section 702 in accordance with *Presbyterian Church*.

The case for dismissing the United States is even clearer under the principles articulated in *Gallo Cattle*.  In *Gallo Cattle*, the Ninth Circuit held that section 704 of the APA limits section 702's waiver of sovereign immunity.  159 F.3d at 1198.  As a result, the sovereign immunity waiver would only apply in instances of "final agency action." *See id.*; §704.  The Ninth Circuit has held that civil actions filed by the United States, such as civil asset forfeiture suits, do not qualify as "final agency action."  *See City of Oakland v. Lynch*, 798 F.3d 1159, 1166 (9th Cir. 2015) ("The Government's decision to

8

file the forfeiture action is not 'final,' because it is not an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'").  This principle has been applied by other district courts, including in cases where the FTC has filed civil actions.  *See Am. Fin. Benefits Ctr. v. FTC*, No. 17-04817, 2018 WL 3203391, at *7–9, (N.D. Cal. May 29, 2018).  The United States' civil enforcement action under the Fair Housing Act is analogous to these proceedings and therefore also fails to qualify as "final agency action."  *See id.*; *Lynch*, 798 F.3d at 1166; Ex. A.  Thus, Plaintiff's assertion of a waiver of sovereign immunity through section 702 misses the mark under *Gallo Cattle* as well.

Lastly, conflating sovereign immunity and jurisdiction,[3] Plaintiff argues that in cases where a plaintiff is seeking declaratory relief but "does not raise a federal question, it may stake the federal court's jurisdiction on 'a defense to a claim that would raise a federal question and that defendant could have asserted in a coercive action.'"  *See* Doc. No. 14 at 8 (quoting *Bell & Beckwith v. United States*, 766 F.2d 910, 912 (6th Cir. 1988)).  As such, Plaintiff contends that "in declaratory judgment actions, 'federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant.'"  *Id.* (quoting *Bell & Beckwith*, 766 F.2d at 912).  Plaintiff reasons that since the United States has already filed suit against Nelson on the basis of a federal question, this requirement is met.  *See id.* at 9.  The Court disagrees for two reasons.

First, both cases cited by Plaintiff in support of the aforementioned argument pertain to interpleader actions.  *See Bell & Beckwith*, 766 F.2d 910; *Morongo*, 858 F.2d 1376.  This, however, is not an interpleader action.  *See* Doc. No. 1.  Thus, *Bell & Beckwith*'s reliance on Federal Rule of Civil Procedure 22 to establish federal question jurisdiction is inapplicable here.  *See* 766 F.2d at 913–17.  Second, the Supreme Court

---

[3] As one administrative law scholar has clearly and concisely explained, "[t]o sue the United States, a complaint must state a basis for jurisdiction, a cause of action, and a waiver of sovereign immunity. A single statute may provide all three, but they are distinct requirements. Subject matter jurisdiction implicates 'the courts' statutory or constitutional power to adjudicate the case.' The APA does not provide jurisdiction." Kovacs, *supra*, at 1158.

has stated that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 19 (1983), *superseded by statute on other grounds* 28 U.S.C. § 1441(e), *as recognized in Marda v. Klein*, 865 F.2d 782, 783 (6th Cir. 1989).  The Supreme Court indicated that, for example, declaratory judgment actions pertaining to patent rights met this standard. *See id.* at 19 n. 19 (citing *E. Edelman & Co. v. Triple-A Specialty Co.*, 885 F.2d 852 (7th Cir. 1937)).  Here, the United States has filed no such action against Plaintiff.  The "coercive action" at issue has been filed against Nelson.

The Supreme Court also noted its previous dicta "that a declaratory judgment plaintiff could not get original federal jurisdiction if the anticipated lawsuit by the declaratory judgment defendant would *not* 'arise under' federal law." *Id.* (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)) (emphasis in original). The fact remains that Plaintiff is not a party to the United States' suit against Nelson and the focus of this action is Plaintiff's contractual obligation to Nelson under its policies. *See* Doc. No. 1 Ex. A; Doc. No. 1.  Thus, the United States' separate suit against Nelson does not cause this declaratory action to "arise[] under federal law." *See* Doc. No. 14 at 8–9; *Franchise Tax Bd.*, 463 U.S. at 19, 19 n.19.

In sum, neither the Declaratory Judgment Act, section 702 of the APA, nor the separate suit against Nelson provide the requisite waiver of  the United States' sovereign immunity or otherwise establish a proper basis for jurisdiction over the United States in this action.

**II. Case or Controversy**

The United States also argues that Plaintiff's claim should be dismissed for lack of subject matter jurisdiction because no case or controversy exists between the parties. *See* Doc. No. 12 at 3–5.

20-cv-00211-MMA (AHG)

1     As the Court noted above, "the operation of the Declaratory Judgment Act is

2  procedural only." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937).

3  Thus, the Ninth Circuit has established that "[a] lawsuit seeking federal declaratory relief

4  must first present an actual case or controversy within the meaning of Article III, section

5  2 of the United States Constitution." *Gov't Emps.' Ins. Co. v. Dizol*, 133 F.3d 1220, 1222

6  (9th Cir. 1998) (citing *Aetna*, 300 U.S. at 239–40).  In order for a controversy to exist, the

7  dispute in question cannot be "hypothetical or abstract."  *See Aetna*, 300 U.S. at 240.

8  Rather, "[t]he controversy must be definite and concrete, touching the legal relations of

9  parties having adverse legal interests," and "must be a real and substantial controversy

10  admitting of specific relief through a decree of a conclusive character."  *Id.* at 240–41

11  (citations omitted).

12     Plaintiff contends that there is a controversy between the parties over Plaintiff's

13  duty to defend or indemnify Nelson for the United States' claims against him.  *See* Doc.

14  No. 12 at 4; Doc. No. 1 ¶ 49.  The United States argues that the real controversy in this

15  action is between Plaintiff and Nelson.  *See* Doc. No. 12 at 4.  The United States further

16  contends that "[c]ontrary to [Plaintiff's] assertions, none of the United States' allegations

17  against Mr. Nelson in the underlying complaint allege the existence of coverage

18  obligations on behalf of [Plaintiff]."  *Id.*  Finally, the United States argues that Plaintiff's

19  "policies are contracts between [Plaintiff] and Nelson" to which the United States is not a

20  party and that it brought its suit against Nelson "without regard to the language of any

21  insurance contracts Nelson may have."  *Id.*

22     Plaintiff responds that a case or controversy does exist between it and the United

23  States because the Government is a potential third-party claimant on Nelson's insurance

24  policies within the meaning of California Insurance Code section 11580(b)(2).[4]  *See* Doc.

25

26  [4] California Insurance Code section 11580 details several provisions that must be included in insurance
27  policies.  Section 11580(b)(2) requires the following:

28     A provision that whenever judgment is secured against the insured or the executor or
       administrator of a deceased insured in an action based upon bodily injury, death, or

11

No. 14 at 6.  To support this argument, Plaintiff relies primarily on authority from the Eastern District of California.  *See id.* at 6 (citing *Atain Specialty Ins. Co. v. Slocum*, No. 1:19-CV-0247 AWI SKO, 2019 WL 2917729, (E.D. Cal. July 8, 2019)).  However, the dispute at issue in *Atain* involved private parties.  *See* 2019 WL 2917729.  In contrast, the present suit involves a sovereign entity, the United States.

The Ninth Circuit's opinion in *Fidelity & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914 (9th Cir. 1979), is instructive here.  *Fidelity* involved a set of facts that is generally analogous to those presently before this Court.  In *Fidelity*, the United States sued one of Fidelity's insureds to recover damages for a fire on federal land.  *See* 596 F.2d at 916. Fidelity then sued one of its insured's other insurers seeking a declaratory judgment clarifying which insurer was implicated in the suit, and also named the insured and the United States as defendants.  *See id.*  The Ninth Circuit grounded its analysis in 28 U.S.C. § 1345[5] and found that it lacked jurisdiction over the United States.  *See id.* at 916–17. The court reasoned that while the United States "may subject itself to various compulsory and permissive counterclaims" when it files suit, there was no precedent "in which jurisdiction has been extended to a separate suit."  *Id.* at 917 (footnote and citations omitted).  The court dismissed the United States on the grounds that it was not an indispensable party because it was "neither the insured nor the insurer; it is, at best, an unnamed contingent beneficiary of the policies."  *Id.* at 918.

The *Fidelity* court also considered the validity of exercising jurisdiction over the United States on California Insurance Code section 11580(b)(2).  Basing its argument on section 11580(b)(2), which requires insurance policies to include a provision allowing

---

property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.

§ 11580(b)(2).

[5] Section 1345 addresses federal courts' jurisdiction over suits brought by the United States as a plaintiff and provides in pertinent part: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States."  28 U.S.C. § 1345.

1  judgment creditors to sue insurers to recover for "bodily injury, death, or property

2  damage," the defendant insurer contended that "the only way a complete declaratory

3  judgment, binding upon all the parties including the United States" could be granted was

4  for a federal court to exercise jurisdiction. *Fidelity*, 596 F.2d at 917, 917 n.2.  Further, it

5  argued that issuing a declaratory judgment that was not binding on the United States

6  would leave it free to subsequently sue the insurers regardless of the outcome of the

7  declaratory action. *See id.* at 917 n.2.  The Ninth Circuit responded as follows:

8

9            While this may be true, the government's right to sue arises only
             after judgment has been obtained against the insured. If the
10           insurers wished to avoid the possibility of inconsistent
             adjudications regarding coverage they might have waited to be
11           sued by the United States . . . or sought to intervene in the action
             commenced by the United States. When Fidelity filed a separate
12           lawsuit, rather than seeking to intervene in the government's
             action, it voluntarily abandoned its best argument for waiver of
13           sovereign immunity and the existence of federal subject matter
             jurisdiction.
14

15

16

17  *Id.* at 917 n.2.

18          While *Fidelity* makes clear that Plaintiff would have had jurisdiction over the

19  United States, as well as means of overcoming sovereign immunity, had it intervened in

20  the United States' suit against Nelson, it has not done so. *See id.* at 917–18.  As a result,

21  it has "voluntarily abandoned its best argument for waiver of sovereign immunity and the

22  existence of federal subject matter jurisdiction." *Id.* at 917 n.2.  *Fidelity* also forecloses

23  any possibility of Plaintiff alleging jurisdiction based on section 1345, which is relevant

24  because, as discussed below, Plaintiff may not assert jurisdiction over the United States

25  under section 1332. *See Fidelity*, 596 F.2d at 916–18.

26          Furthermore, even though the *Fidelity* court acknowledged that a controversy

27  existed in the case before it, and "that the United States [was] a proper party defendant"

28  in that case as well, the court nevertheless declined to exercise jurisdiction over the

20-cv-00211-MMA (AHG)

United States.[6]  *See id.* at 918 ("All the same, it does not follow that resolution of the controversy between the insurers is reasonably required for a complete determination of the original suit by the United States against the insured.").  *Fidelity* also undermines Plaintiff's reliance on California Insurance Code section 11580(b)(2).  *See id.* at 917; Doc. No. 14 at 6.  Even if "bodily injury, death, or property damage" within the meaning of section 11580(b)(2) encompasses a suit for discrimination brought by the United States under the Fair Housing Act, the Court need not decide that issue in order to dispose of Plaintiff's argument.  After all, the Ninth Circuit declined to extend jurisdiction over the United States in *Fidelity* where the United States' underlying claim was for property damage.  *See* 596 F.2d at 916, 917–18.  Accordingly, the Court rejects Plaintiff's argument that jurisdiction may be exercised because of section 11580(b)(2).

Finally, it is axiomatic that an action for declaratory relief against the United States "must also fulfill statutory jurisdictional prerequisites."  *Dizol*, *supra*, 133 F.3d at 1222–23 (citing *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950)).  The Supreme Court has made clear that section 702 of the APA does not provide an independent conferral of jurisdiction.  *See Califano v. Sanders*, 430 U.S. 99, 104–07 (1977).  As such, Plaintiff must meet the requirements of 28 U.S.C. § 1332, the only other statutory basis upon which it alleges this Court has subject matter jurisdiction.  *See* Doc. No. 1 ¶¶ 1–2.  But Plaintiff's invocation of jurisdiction over the United States under 28 U.S.C. § 1332 is

---

[6] The Ninth Circuit cited to two cases to support the conclusions regarding the existence of a controversy and the United States' status as a proper defendant—*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) and *Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653 (10th Cir. 1946).  *See Fidelity*, 596 F.2d at 918.  However, the Court declines to give these references persuasive weight in the present case for the following reasons.  First, the Ninth Circuit's reference to these cases in *Fidelity* was dicta and as such is not binding on this Court.  *See id.*  Second, neither of the cases cited in *Fidelity* involved disputes to which the United States was a party.  *See Md. Cas. Co.*, 312 U.S. 270; *Johnson*, 157 F.2d 653.  Third, both cases involved cases where there were parallel proceedings between state and federal courts.  *See Md. Cas. Co.*, 312 U.S. at 271, 274; *Johnson*, 157 F.2d 655–56.  As such, both cases invoked concerns that are not at play here.  *See id.*  Finally, the Court has found a plethora of reasons to dismiss the United States from this suit.  Even if the Court were to delve deeper into the general principles espoused by these cases, it would not change the outcome.  Therefore, the Court declines to engage in further analysis on this point.

fatally flawed.  *See* Doc. No. 1 ¶¶ 1–2.  Section 1332 requires, among other things, that the parties to a suit be "[c]itizens of different states."  However, "the United States is not a citizen for diversity purposes" and cannot be sued under section 1332.  *See Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C. Cir. 1993).  Thus, Plaintiff's assertion of diversity jurisdiction over the United States presents sufficient grounds by itself to dismiss the United States from this action.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the United States' motion to dismiss for lack of subject matter jurisdiction.  Dismissal is without prejudice and without leave to amend.  *See Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017); *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (order) ("Dismissals for lack of jurisdiction should be without prejudice so that a plaintiff may reassert his claims in a competent court." (internal quotation marks and ellipsis omitted)); *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (affirming trial court's denial of leave to amend where plaintiffs could not cure a basic flaw in their pleading).  Accordingly, the Court **DIRECTS** the Clerk of Court to terminate this action as to the United States.

**IT IS SO ORDERED**.

DATED: June 24, 2020

HON. MICHAEL M. ANELLO
United States District Judge