# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire Corporation,<br><br>                            Plaintiff,<br><br>v.<br><br>LARRY NELSON, an individual, TRACY IRENE GOLDEN, an individual, SYLENA SANDERS, an individual, the UNITED STATES OF AMERICA, and Does 1 – 5,<br><br>                            Defendant. | Case No. 20-cv-00211-MMA (DEB)<br><br>**ORDER GRANTING DEFENDANT LARRY NELSON'S MOTION TO STAY**<br><br>[Doc. No. 11] |

Plaintiff Safeco Insurance of America ("Plaintiff") filed suit against Defendants Larry Nelson ("Nelson"), Tracy Irene Golden ("Golden"), Sylena Sanders ("Sanders"), and the United States of America seeking declaratory relief. *See* Doc. No. 1. Plaintiff petitions this Court for a declaratory judgment stating, in relevant part, that it does not owe its insured Nelson a duty to defend or indemnify him in any of the proceedings brought against him by the other named defendants. *See id.*

Defendant Nelson now moves to stay all proceedings in this action. *See* Doc. No. 11. Plaintiff filed a response to Nelson's motion. *See* Doc. No. 13. Nelson in turn

replied. *See* Doc. No. 15. The Court took the matter under submission on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 18; Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **GRANTS** Nelson's motion to stay.

## BACKGROUND

### A. Procedural Background

Nelson is Plaintiff's insured and is defending against three separate actions pending before other courts. *See* Doc. No. 1. The first of these actions is a civil enforcement suit filed in the Southern District of California by the United States under the auspices of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601, *et seq*. ("the Fair Housing Act"). *See id.* ¶12; Doc. No. 1-2 ("Ex. A"). The United States alleges that Nelson has engaged in a pattern of discriminatory behavior towards his female tenants on account of their sex at both of his rental properties, including allegations of sexual harassment. *See id.* The second is a lawsuit filed in Superior Court by Golden, one of Nelson's former tenants and a co-defendant in this action. *See id.* ¶¶ 9, 14–19; Doc. No. 1-3 ("Ex. B"). Golden alleges several tort theories including assault, battery, negligence, intentional infliction of emotional distress, and false imprisonment. *See* Ex. B. ¶¶12–49. Golden also alleges violations of the Fair Housing Act. *See id.* ¶¶ 50–54. Finally, the third action was filed by another of Nelson's former tenants, Sanders, who is also a co-defendant in this action. *See* Doc. No. 1 ¶¶ 10, 20; Doc. No. 1-4 ("Ex. C"). Sanders intervened in the United States' action against Nelson and sets forth allegations of Fair Housing violations as well as California statutory and property claims. *See* Ex. C.

Plaintiff filed suit in this Court seeking declaratory relief stating that it owes Nelson neither a duty to defend nor a duty to indemnify in any of the pending actions against him. *See* Doc. No. 1 ¶¶ 48–79. Further, Plaintiff seeks reimbursement from

Nelson for any costs it expends in his defense, plus interest. *See id.* ¶ 81. Defendants Nelson and Sanders answered Plaintiff's complaint.[1] *See* Doc. No. 9; Doc. No. 10.

Ordinarily, parties to an action in this procedural posture would be expected to participate in case management and to commence discovery. *See* CIVLR 16.1.c–d. However, Nelson has filed a motion to stay these proceedings pending resolution of all the underlying actions. *See* Doc. No. 11. Nelson argues that a stay is warranted under *Landis v. North American Co.*, 299 U.S. 248 (1936), and also sets forth arguments based on California law. *See id.* at 15–24.[2] In response, Plaintiff relies upon *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), to assert this litigation should proceed. *See* Doc. No. 13 at 5–11. Nelson argues in reply that *Brillhart* does not provide the applicable legal standard and urges the Court to stay the action pursuant to *Landis*. *See* Doc. No. 15 at 4–6.

**B. Insurance Policies**

Plaintiff issued Nelson a number of insurance policies to cover his rental properties.[3] *See* Doc. No. 1 ¶¶ 24–38; Doc. No. 11 at 11–12. Plaintiff identifies five

---

[1] Defendant Golden has not yet appeared in the action; is it unclear whether Plaintiff has served Golden with the complaint and summons. Defendant United States appeared and promptly moved for dismissal based on lack of subject matter jurisdiction. *See* Doc. No. 12. The Court granted the motion and the United States is no longer a party to this action. *See* Doc. No. 19.

[2] All citations refer to the pagination assigned by the CM/ECF system. All docket references refer to the docket of this action unless otherwise noted.

[3] While Plaintiff refers to five insurance policies in its complaint, Nelson only refers to four policies in his motion to stay. *See generally* Doc. Nos. 1; 11. Additionally, the Court notes that two of the policies attached by Nelson as exhibits to his motion do not match the policies attached as exhibits to Plaintiff's complaint. For example, Nelson reports that the policy attached as Exhibit 8 reflects "Policy No. OA3383304" and was effective beginning Jul 25, 2006. *See* Doc. No. 11 at 12; Doc. No. 11-1 ¶ 12. However, Exhibit 8 itself reports that it reflects policy number "OA3379687" and was effective beginning June 13, 2006. *See* Doc. No. 11-10, Ex. 8. Second, Nelson's Exhibit 6 and Plaintiff's Exhibit D refer to the same policy, but Nelson's submission is twenty pages longer than Plaintiff's. *See* Doc. No. 11-8, Ex. 6; Doc. No. 1-5, Ex. D. The Court has reviewed these documents and believes that the discrepancy is explained by the addition of the same policy from a more recent date by Nelson. *See id.* Although not dispositive of the current matter, the Court concludes that there are five policies at issue in this dispute.

3

policies in its complaint that it issued to Nelson. *See* Doc. No. 1 ¶¶ 24, 26, 31–33. Plaintiff divides these policies into two categories: "Landlord Protection Policies" and "Dwelling Fire Policies." *See id.* at 8–9; 15–16. The Landlord Protection Policies cover two of Nelson's rental properties; the policies were valid from November 16, 2009 to November 16, 2019 and March 6, 2010 to March 6, 2015 respectively. *See id.* ¶¶ 24, 26. The policies included the same options and coverage forms. *See id.* ¶¶ 25, 27. The Landlord Protection Policies covered Nelson for "bodily injury" and "property damage" occurring at the insured property, subject to exclusions. *See id.* ¶ 28. The exclusions highlighted by Plaintiff include injuries which were either "expected," "intended," or were "the foreseeable result of an act or omission intended by any ***insured***" as well as violations of criminal law or local ordinances. *See id.* ¶ 30 (emphasis in original). The policies also state that a criminal charge or conviction is not necessary to trigger that exclusion. *See id.*

The first two Dwelling Fire Policies identified by Plaintiff covered Nelson's two rental properties; the policies were operative from July 25, 2006 through September 25, 2009 and March 6, 2007 through March 6, 2010 respectively. *See id.* ¶¶ 31, 32. The last policy covers a third property, which appears not to be the subject of any of the underlying suits. *See id.* ¶¶ 33; Exs. A–C. Like the Landlord Protection Policies, the Dwelling Fire Policies protected Nelson from claims of "bodily injury" or "property damage" subject to certain exclusions. *See* Doc. No. 1 ¶ 35 (emphasis in original). Also, like the Landlord Protection Policies, the Fire Dwelling Policies included exclusions for "bodily injury" or "property damage" that "is expected or intended by any **insured** or which is the foreseeable result of an act or omission intended by any **insured**." *See id.* ¶ 37 (emphasis in original). The exclusions also covered violations of criminal law and local ordinances and did not require a criminal conviction or charge to be triggered. *See id.*

//
//

**C. Applicable Legal Standard**

As a threshold matter, the parties do not agree on the applicable legal standard. Nelson argues that the correct standard for determining the appropriateness of a stay is set forth in *Landis*. *See* Doc. No. 11 at 15–16. Plaintiff argues that *Brillhart* provides the correct governing standard. *See* Doc. No. 13 at 6–11. In reply, Nelson argues that *Brillhart* is inapplicable because it "centered on whether a district court had constitutional and statutory ***jurisdiction*** over the declaratory action, not whether to stay the action and proceed after the underlying action resolved." Doc. No. 15 at 4 (citing *Gov't Emps.' Ins. Co. v. Dizol*, 133 F.3d 1220, 1221 (9th Cir. 1998); *Brillhart*, 316 U.S. at 493–94) (emphasis in original). Nelson states that he "is not arguing that this Court does not have jurisdiction over this matter," but rather "asks this Court to stay this action to prevent undue prejudice." *Id.* The Court finds *Brillhart* inapplicable for the following reasons.

First, *Brillhart* involved a case of parallel proceedings in federal and state courts. *See* 316 U.S. at 492–93. The *Brillhart* Court indicated that such proceedings exist "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495. As a result, *Brillhart* expressed concerns of comity between the courts, noting for example that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* Thus, *Brillhart* directed lower courts to consider a number of factors in deciding whether it was appropriate to exercise jurisdiction over a claim for declaratory relief, including "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *See id.*

It is true that the action before the Court does, to a certain extent, involve related proceedings in state court – one of the underlying actions was filed in state court by Golden against Nelson. *See* Ex. C. However, Golden's action is not really parallel to the action presently before the Court. *Compare id.*, *with Brillhart*, 316 U.S. at 495 ("[W]here another suit is pending in a state court presenting the same issues, not governed by

federal law, between the same parties."). A clear example of parallel proceedings can be found in *Wilton v. Seven Falls Co.*, where there were disputes over the existence of the same duty to defend or indemnify taking place in state and federal courts. 515 U.S. 277, 279–80 (1995). In contrast, the Golden action does not center on, or even address the issue of whether Plaintiff owes Nelson a duty to defend or indemnify, and Plaintiff is not a party to the Golden action.[4] *See* Ex. B. Thus, the proceedings are not parallel and do not raise the same comity concerns at issue in *Brillhart*.

Second, as Nelson points out and the Ninth Circuit explained in *Dizol*, *Brillhart* involved the discretionary exercise of jurisdiction by a district court under the Declaratory Judgment Act. *See Dizol*, 133 F.3d at 1225 (noting that "[t]he *Brillhart* factors remain the philosophic touchstone for the district court" when "a party timely objects to the exercise of discretionary jurisdiction under the Declaratory Judgment Act . . . ."). An affirmative application of the so-called "*Brillhart* factors" potentially would result in the dismissal of this action as it pertains to Golden. *See Brillhart*, 316 U.S. at 295; *Dizol*, 133 F.3d at 1225. While the option of voluntary dismissal always remains open to Plaintiff, the issue before the Court on this motion is whether a stay of proceedings is appropriate.

In contrast, *Landis* focuses directly on the issue of whether a federal court has the power to stay proceedings before it while others move forward. *See* 299 U.S. 248. The *Landis* Court concluded that federal courts have such power, as a matter of discretion, because it "is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Id.* at 254. As set forth in further detail below, *Landis* went on to describe a range of factors for courts to consider in deciding whether or not to stay proceedings. *See id.* at 254–55.

---

[4] Moreover, Golden is the only named defendant in the present action who has neither appeared nor responded in this Court.

Here, Nelson does not raise issues of jurisdiction or comity.  Rather, he seeks a stay of these proceedings.  Therefore, the Court will apply the standard set forth in *Landis*.

## **LEGAL STANDARD**

"A district court has discretionary power to stay proceedings in its own court . . . ." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254).  A district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not "necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (citations omitted).  However, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

In determining whether to grant a stay, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay," including:

> [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*See Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  "'[I]f there is even a fair possibility that the stay . . . will work damage to someone else,' the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity.'" *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (quoting *Landis*, 299 U.S. at 255).  The burden is on the

movant to show that a stay is appropriate. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

## DISCUSSION

Nelson argues that, under *Landis*, a stay is appropriate in the present action. *See* Doc. No. 11 at 15–24. Specifically, Nelson argues that each of the three factors identified by the Ninth Circuit in *Lockyer* and *CMAX* weighs in favor of a stay. *See id.* Plaintiff does not specifically address these factors. *See generally* Doc. No. 13. Nonetheless, the Court analyzes each factor in turn.

**A. Relative Hardship to the Parties**

The first two factors laid out in *Lockyer* and *CMAX* effectively serve to measure the relative hardship between the parties in deciding whether or not a stay is appropriate. *See Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268). Therefore, the Court will consider these factors together.

The first factor for the Court to consider is "the possible damage which may result from the granting of a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268). Plaintiff argues that "it would be unfair to [Plaintiff] to not allow it to adjudicate its coverage defenses now, instead of waiting for the results of the Underlying Actions, all while funding Nelson's defense in those actions," citing to non-binding authority from the Northern District of California in support. *See* Doc. No. 13 at 8 (citing *See M.D. Sass Inv'rs Servs., Inc. v. Reliance Ins. Co.*, 810 F. Supp. 1082, 1089 (N.D. Cal. 1992); *Allstate Ins. Co. v. Gillette*, No. C 05-02385 WHA, 2006 WL 997236, at *4 (N.D. Cal. 2006)). However, the court in *M.D. Sass* relied upon out-of-circuit authority and the *Allstate* case involved application of the standard set forth in *Brillhart* and *Dizol*. As such, both cases are inapposite.

Nelson highlights a more recent, relevant case from the Northern District of California in reply. *See* Doc. No. 15 at 5 (citing *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, (N.D. Cal. Feb. 12, 2019)). The *Omnicell* court rejected the argument that a delayed determination of an insurer's coverage

8

obligations constituted hardship under *Landis*.  *See Omnicell*, 2019 WL 570760, at *5 ("Other courts in this district have previously rejected the same argument by an insurer, particularly because advancing defense costs is 'part of an insurer's obligation and costs of doing business.'").  The Court finds *Omnicell* persuasive and similarly concludes that the first factor weighs in favor of granting a stay.

The second factor for the Court to consider is "the hardship or inequity which a party may suffer in being required to go forward."  *Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268).  Nelson argues that declining to stay this case would prejudice him far more than granting a stay would prejudice Plaintiff.  *See* Doc. No. 11 at 16.  Nelson claims that allowing the present action to move forward would force him to "divide his attention and spend his own money to fight this 'two-front war' with [Plaintiff] to maintain a defense in the Underlying Actions."  *Id.* at 17.  Further, Nelson argues that "[i]n parsing through the claims that trigger coverage, [he] will have to litigate the same factual issues pending resolution in the Underlying Actions to establish whether these claims are potentially covered by [Plaintiff's] Policies."  *Id.* at 16.

Plaintiff challenges the notion that a "two-front war" justifies the granting of a stay.  Doc. No. 13 at 10–11.  In so doing, Plaintiff cites to *Lockyer* and an unpublished case from the Central District of California, *Great American Assurance Co. v. M.S. Industrial Sheet Metal, Inc.,* No. SACV 11-754-JST (MLGx), 2011 WL 13228037, (C.D. Cal. Sept. 22, 2011), in support.  *Id.* (citations omitted).  Plaintiff further reasons that a declaratory judgment "would resolve the uncertainty of obligations between Nelson, [Plaintiff], and the plaintiffs in the Underlying Actions" and "would be helpful to the parties in guiding their future course of conduct and would also inform the plaintiffs in the Underlying Actions, who have a substantial interest in knowing whether insurance funds ultimately may be available for Nelson's potential liability in the Underlying Actions."  *Id.* at 8 (citation omitted).

The Court notes *Lockyer*'s statement that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of

*Landis.*" 398 F.3d at 1112. The Court further notes that *Great American* relied in part on this statement in rejecting an argument that the existence of a "two-front war" was a fact that should be weighed in favor of granting a stay. *See* 2011 WL 13228037, at *3. However, *Lockyer* is distinguishable on its facts, as it involved neither an insurance company nor a dispute over coverage. *See* 398 F.3d 1098. *Great American* involved a less complicated insurance dispute over a single insurance policy and the applicability of a single exclusion. *See* 2011 WL 13228037, at *2. In contrast, the present dispute involves three separate underlying suits, at least five insurance policies, and potentially requires determining the applicability of several exclusions. *See* Doc. No. 1. This complexity is amplified by the fact that the underlying actions mix civil enforcement and private party claims. *See* Ex. A; Ex. C. As such, the potential hardship and cost of allowing this action to proceed is significantly greater than was the case in *Great American*, which represented a far simpler set of circumstances. *See* 2011 WL 13228037. Further, in *Omnicell*, the court found that the possibility of "being forced to litigate on two fronts" constituted hardship to the insured. *See* 2019 WL 570760, at *5–6. Likewise, the Court finds that the second factor also weighs in favor of granting a stay.

After evaluating the relative hardship between the parties—the potential of having to defend Nelson for claims that may be covered by one or more of the policy exclusions for Plaintiff and the cost of litigating multiple suits simultaneously for Nelson—the Court finds that the first two factors balance in favor of a stay.

**B. The Orderly Course of Justice**

The third factor for the Court to consider is "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268). Nelson argues that this factor weighs in favor of granting a stay because allowing Plaintiff's action to go forward would result in litigation of duplicative issues. *See* Doc. No. 11 at 22. Plaintiff does not address this point in its opposition. *See generally* Doc. No. 13.

The Ninth Circuit has established that "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva*, 593 F.2d at 863. Further, the Ninth Circuit explained that "[t]his rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* at 863–64 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)).

Nelson argues that allowing both this action and the underlying actions to go forward will burden judicial economy by requiring the parties to relitigate the same issues. *See* Doc. No. 11 at 22. This concern is a valid one. First, the action before the Court involves at least five insurance policies, and the variety of coverages and exclusions potentially at issue creates a real risk of duplicative factual inquiry. The risk is further complicated by the fact that the primary underlying action is not simply a civil enforcement action by the United States, but also incorporates Sanders's intervention, which sets forth ordinary tort claims. *See* Ex. A; Ex. C. Further, Golden's action also raises tort claims. *See* Ex. B. Thus, determining the applicability of the policies and exclusions presented by Plaintiff may require this Court to adjudicate factual questions that overlap with the tort claims raised by Sanders and Golden in their respective actions. *See* Doc. No. 1 ¶¶ 28, 30, 35, 37; Ex. B; Ex. C. As such, it is entirely conceivable that some of the allegations at issue in the underlying actions may be at issue here even while others are not.

However, duplicative factual inquiry is not the only concern the Court has in allowing this action to go forward. A recurring theme in the authority cited by both parties is the notion of parallel proceedings between state and federal courts. *See, e.g., Fed. Ins. Co. v. Steadfast Ins. Co.*, 209 Cal. App. 4th 668, 671–72 (2012); *Great American*, 2011 WL 13228037, at *1–2; *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *1 (N.D. Cal. Feb. 12, 2019). While the present

case does not involve parallel proceedings between state and federal courts, "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties," *Brillhart*, 316 U.S. at 495, it does involve ongoing related proceedings in state and federal courts. *See* Ex. A; Ex. B; Ex. C. To this effect, the Court is concerned about the impact allowing this action to proceed would have on the efficient resolution of the underlying action in this district.

There is a real risk that, were both actions to proceed, by the time this Court resolved the issues of insurance coverage the underlying action could have reached a critical juncture as well. At which point, a finding that either eliminated or limited Nelson's coverage could derail the efficient administration of the underlying action. Were the issue of insurance coverage before the same judge presiding over the underlying action, that judge would be able to appropriately exercise discretion to resolve the scope of coverage before proceeding to the merits and could do so in a manner that would promote the efficient resolution of the dispute. However, that is not the case here. Instead, Plaintiff asks this Court to resolve issues that may materially affect the progress of another case that is pending in another courtroom. *See* Doc No. 1; Ex. A; Ex. C. The Court finds doing so would not promote "the orderly course of justice." *See Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268).

As such, all of the relevant factors under *Landis* and *Lockyer* weigh in favor of staying this case.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Nelson's motion to stay. The Court **ORDERS** all proceedings in this matter **STAYED** pending resolution of the related state and federal actions.

**IT IS SO ORDERED**.

DATED: July 7, 2020

HON. MICHAEL M. ANELLO
United States District Judge